**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

Sherry McGann
1535 Grand Ave – 2355
Grand Lake, CO 80447
(303)507-7658
sherry@nalanimaui.com

**FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO**
*3:30 pm, Dec 10, 2020*
**JEFFREY P. COLWELL, CLERK**

Plaintiff,

v.

1450 Oka Kope LLC
Michael Shudinis, individually, and in his official capacity as  51% owner of 1450 Oka Kope, a
Colorado corporation,
Kathy Knutson,
11707 E. 51st Avenue, Denver, CO 80239
kathy@tigertechnologyusa.com
mike@tigertechnologyusa.com

Defendant(s).

**PLAINTIFFS' MOTION FOR CONSTRUCTIVE TRUST CLAIM, COMPLAINT
& JURY DEMAND, CERTIFICATE OF SERVICE**

**COMES NOW** Plaintiff, Sherry McGann, Prose, respectfully submits the following as

her First Amended Complaint and Jury Demand in this action.  For the reasons set forth below,

and because it is in the interest of justice, the relief sought herein should be granted and

judgment should enter in favor of Plaintiff.

**GENERAL ALLEGATIONS**

1.  Plaintiff, Sherry McGann is a citizen and resident of Grand Lake, Colorado.

2.  Defendants, 1450 Oka Kope LLC is an entity located and operating in Denver,

Colorado.

3.  Michael Shudinis is a citizen and resident of Denver, Colorado, or immediate surrounding area.

4.  Kathy Knutson is a citizen and resident of Denver, Colorado, or immediate surrounding area.

## INTRODUCTORY FACTS AND GENERAL ALLIEGATIONS

5.  Plaintiff purchased 4 acres in Kaanapali – Maui, Hawaii known as 1450 Oka Kope, lot 16 in the Kaanapali Coffee Farm.

6.  The property was divided into two separate dwelling pads.  Plaintiff designed and developed a "cottage" and "barn" on the lower dwelling pad.

7.  Plaintiff designed the "main house" for the upper dwelling pad.

8.  Plaintiff entered into an Amended and Restated Operating Agreement on 02-02-2018 with 1450 Oka Kope, LLC.

9.  Defendant(s) used the plans that were developed by Plaintiff and paid a third-party to redesign and expand the current "main house" to provide additional living space and incorporate two additional bedrooms above the detached 3 car-garage.

10.  Defendants(s) were supposed to build a "main house" to provide additional income by renting the "main house" in conjunction with the "cottage" and "barn" planned business plan and operations.

11.  Defendant(s) were supposed to have the "main house" completed by 01-01-2020

12.  Defendant(s) prohibited Plaintiff from operating the farm to generate income per the Operating Agreement.

13.  Defendant(s) tricked and negligently induced Plaintiff into believing the business plan was delayed until on-going litigation imposed upon Plaintiff were dismissed.

14.  Defendant, Knutson, testified in May 2019 at a hearing with Special Magistrate Angelia Arkin, that Plaintiff retained 49% ownership of the property located at 1450 Oka Kope, Lahaina, HI 96761.

15.  Defendant, Knutson, provided fraudulent documents to Lahaina police in October 2019 when she forcibly removed Plaintiff from the property in Hawaii.

16.  Defendant, Knutson was trespassing and did not have a legal right to prohibit Plaintiff from entering the property.

17.  Defendant(s) paid Plaintiff $500k between October 2018 and February 2019 for property to be deeded into the Operating Agreement for 1450 Oka Kope LLC

18.  Defendant(s) took over 18 months to secure financing per the agreement.

19.  Defendant(s) claimed the financing could only be accomplished if Plaintiff changed her ownership to 49% and the financing was a personal mortgage instead of a business loan as originally intended.

20.  Defendant(s) refinanced property as a personal mortgage claiming they were unable to have McGann a part of anything because of current credit issues and legal issues.

21.  In December 2018, Defendant(s) asked Plaintiff to sign notes to help them achieve the financing and told Plaintiff that nothing would actually be filed against her property in Grand Lake, CO.

22.  Plaintiff naively believed Defendant(s) and signed documents requested.

21.  Defendant(s) refinanced on 02-02-2019

22.  Defendant(s) filed liens on the property in Grand Lake.  It was discovered when Plaintiff attempted to file for Bankruptcy under Chapter 13 and due to notes fraudulently filed the debt was in excess of the amount allowed.

23.  Plaintiff was forced to file Chapter 13.

24.  Defendant(s) harassed Plaintiff throughout the entire process forcing her to withdraw and prepare to re-file under Chapter 7.

25.  Defendant(s) have failed to provide accounting for two separate notes in the amount of $500k and $381k.

26.  The $500k amount given to Plaintiff was for the interest of the property to be deeded into the entity formed as 1450 Oka Kope LLC.  How can Plaintiff owe for money given to deed her interest?

27.  Defendant(s) prohibited operation of the business in the lower portion which would have generated more than enough income to cover expenses of the property.

28.  Defendant(s) abused the trust of Plaintiff and pretended to be protecting Plaintiff by requesting to take over utility payments and pretending to work with builders to construct the "main house".

29.  Defendant(s) never broke ground or engaged in any contract with a builder for the "main house" and instead took control of the property to enjoy themselves prohibiting Plaintiff from operating the business or even collecting her personal belongings.

30.  Defendant(s) have listed the property for sale in December 2020 without permission from Plaintiff and while continuing the refusal of access to said property.

## FIRST CLAIM FOR RELIEF – BREACH OF CONTRACT

31.  Plaintiff hereby incorporates the preceding paragraphs as if stated, fully, herein.

32.  The Defendant and Plaintiff entered in a contract on Jan 18, 2018 and docusigned later that month. On **Aug 8th, 2017** a "LOI part II" email was received (ATTTACHMENT 1)

33.  The Defendant failed to perform the contract; and

34.  The Plaintiff substantially performed and or was excused from nonperformance.

35.  The Plaintiff is entitled to recover damages.

36.  The Defendant breached the contract by repudiation, or "anticipatory breach". Defendants displayed a clear and definite intent not to perform the contract by both words and conduct.

37.  The Plaintiff substantially performed its duty to finish the lower dwelling site and install a farm for Agro Tourism and rental of the property for other agricultural uses.

38.  The Defendant(s) caused a material breach by failing to perform the essential term of the contract and construct the "main house".

39.  The Defendant(s) fraudulently induced the Plaintiff to enter into the agreement by (1) making false representation of material existing facts and concealed material existing facts that the Defendant(s) had a duty to disclose; (2) the Defendant(s) knew the representation was false and that the fact they never intended to build a "main house" and they prohibited Plaintiff from operating the business plan …. It should have been disclosed; (3) the Plaintiff justifiably relied on the truth of the represented fact or the non-existence of the concealed facts; and (4) the Plaintiff's reliance on the representation or concealment caused her damages.

40.  Defendant(s) were fully aware the Plaintiff was under undue duress and used the opportunity to add undue influence with Plaintiff exercising her free will and dominated the Plaintiff by using both words of threating to sell property  and conduct of physically removing Plaintiff from property with fraudulent documents claiming Plaintiff gave her 40% away for no consideration whatsoever.

41.   Plaintiff seeks damages other than general damages that were within the foreseeable contemplation of the parties at the time the contract was made.  Lost future profits will be proven with reasonable certainty by sufficient evidence of the fact that a future loss will occur and sufficient evidence for the trier of fact to make a reasonable approximation of the amount of the loss based upon the business plan projections and the success Plaintiff has experienced this past year when she was forced to open the operation of the mushroom farm at the Grand Lake residence of Plaintiff.

42.   Plaintiff seeks non-economic damages because the breach is accompanied by willful and wanton conduct and the dames are a natural and proximate consequence of such conduct. Defendant(s) acted intentionally and without any legal justification or excuse.

43.   Plaintiff caused mental anguish, physical pain, and impairment of quality of life. The conduct was in extraordinary contractual circumstances and manipulated intentionally to cause damages.

44.   Plaintiff seeks relief to remedy the breaches and is seeking an injunction to prevent future breaches, reformation, and rescission by prohibiting the sale of the property and allowing Plaintiff to operate the lower dwelling site as intended and agreed upon in the Operating Agreement.

45.   Defendant(s) have been unjustly enriched by negligently inducing Plaintiff into an Operating Agreement in which they never intended to follow through on.  They knew the Plaintiff was suffering financial, emotionally and physically and took full advantage of the situation over a number of years and continue doing so at the time of this filing, without any consideration whatsoever.  The Defendants offer Plaintiffs own proprietary to Plaintiffs company

Celestial Properties LLC who funded the entire project.  Defendants listed property and offered

sharing "main house" plans they did NOT build.


## SECOND CLAIM FOR RELIEF – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALINGS

46.  Plaintiff hereby incorporates the preceding paragraphs as if stated, fully, herein.

47. Every contract contains an implied duty of good faith and fair dealing."

48.  Defendant(s) are subject to liability for breaching the implied duty of good faith and

fair dealing, just as they are breaching duties expressly written in the Operating Agreement

contract.

49. The duty of good faith and fair dealing principally applies because Defendant(s) had

discretion in performing the contract.  They amended the Operating Agreement and took control

of the project in 2018.  They breached the duty of good faith and fair dealing when they

exercised its discretion in a manner inconsistent with the reasonable expectations

of the Plaintiff to the contract.

50.  The Defendant(s) are attempting to inject new substantive terms and conditions into

the contract which is not allowed.

51.  Colorado Courts apply the duty of good faith and fair dealing to "promote [] 'the

central policy underlying contract law, that of construing contracts so as to effectuate the parties'

intentions."

52.  Plaintiff will prove by a preponderance of the evidence that: (1) The plaintiff and

defendant were parties to a contract; (2) The contract allowed the defendant discretion in the

performance of the contract's terms; and (3) The defendant exercised the discretion in a manner

inconsistent with the parties' reasonable expectations. Every contract requires the parties to act in

good faith and to deal fairly with each other in performing or enforcing the express terms of the

contract. A party performs a contract in good faith when (his) (her) (its) actions are consistent

with the agreed common purpose and with the reasonable expectations of the parties. The duty of

good faith and fair dealing is breached when a party <u>acts contrary to that agreed common</u>

<u>purpose and the parties' reasonable expectations.  How is it not reasonable for Plaintiff McGann</u>

<u>not to have expectations to run the business it was developed for.and she spent her entire estate</u>

<u>developing from 2015-2017 when  Knutson came on site constantly and repeatedly in person,</u>

<u>text and written correspondence induced McGann to complete the property and "live her dream".</u>

<u>She pretended to be protecting the "lower lot" McGann was completing from Shudins "the boss"</u>

<u>and "money man"</u>[1].

53.  Discretion is present in many contractual provisions insofar as they permit, but do

not necessarily require, certain actions. However, certain contract terms — such as building the

"main house" at an investment of $2.5m, in a time period of 18 months — clearly gives rise to

the duty of good faith and fair dealing.

54. In *dicta*, courts have stated that the duty of good faith and fair dealing may also

apply "in the enforcement context [to] bar[] **dishonest conduct such as raising an imaginary**

**dispute**, **asserting an interpretation contrary to one's own understanding**, or **falsification**

of facts."

55.  Defendant(s) have created an imaginary dispute regarding the property, asserted lies

and misrepresentations of every element in the Operating Agreement without providing any

documentation to prove their claim.  Defendant(s) produced forged signatures on documents

---

[1] Evidence has already been produced to Defendant's counsel during 2004 hearings.  Thousands of documents were produced.

their attorney purported were signed by Plaintiff through means of "DocuSign" yet refusing to provide any proof or evidence of such.

56. Defendants exercised discretion in a manner inconsistent with Plaintiffs' reasonable expectations. Some courts have referred to this element as requiring "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." Other courts have focused on whether the defendant's exercise of discretion deprived the plaintiff of the benefit of his or her bargain by acting dishonestly or contrary to accepted commercial practices. . Courts use these different formulations interchangeably. The focus is always on the parties' intent and the reasonableness of the defendant's conduct, because every "party to a contract has a justified expectation that the other will act in a reasonable manner in its performance." Defendants were fully aware of ALL personal, business, and legal doings and inserted themselves full into leaving Plaintiff holding debt for no compensation and intentionally humiliating and causing unbearable emotional damages due to the nature  and level of personal trust established over the years. As of this filing Plaintiff has reason to believe the buyer that is making an offer of the Maui property which has only been on the market for days is a connection to Shudinis and his circle of wealthy friends. Plaintiff will testify or offers herein as affidavit of truth that Knutson took Plaintiff McGann to a few of their parties and pointed out the "billionaires who could buy that property in a second".[2]

57. Defendant(s) have exercised their discretion in a manner inconsistent with what was agreed upon. In fact, they used deceptive tactics to lull Plaintiff into a sense of false security.

Plaintiff is seeking noneconomic damages due to Defendant(s) willful and wanton manner of breaching their duty of good faith and fair dealing.

---

[2] Referring to the Maui Property McGann was struggling to finish in July 2017.

## THIRD CLAIM FOR RELIEF – BREACH OF FIDUCIARY DUTY

58. Plaintiff hereby incorporates the preceding paragraphs as if stated, fully, herein.

59. Defendant, Kathy Knutson, established a confidential relationship and breached her fiduciary duty. The fiduciary relationship arose when Defendant(s) entrusted to act for the benefit of and in the interest of Plaintiff McGann who gave her legal power and authority to do so.     57.

60. Plaintiff McGann placed trust and confidence in Defendant(s) that they would honor the Operating Agreement and build the main house. Plaintiff McGann acted reasonably and was justified in doing so under the circumstances of her being attacked by attacked by Swany a pretend husband and a corrupt contractor that began the project in 2015. Defendant(s) accepted and invited the Plaintiff to a joint venture to create an even bigger opportunity for income than what was currently projected. Plaintiff accepted the responsibility and acted by investing personal funds and time while continuing to implement the farm project; expecting the business plan to be operational soon. Plaintiff has known Defendant(s) personally since 1999 acting as their insurance agent and believing she was considered a friend. Plaintiff trusted Defendant(s) and they exploited, lied to and manipulated everything to gain complete control of the property. Defendant(s) have recently listed the property for sale at $3m.[3]

61.To establish that a confidential relationship existed, the plaintiff will show that:

(1) she placed trust or confidence in the defendant; (2)  she acted reasonably or was justified in doing so; (3) the trust or confidence was accepted, **invited**, or acquiesced in by the defendant,

---

[3] Plaintiff believes the sale on the table only days after listing is an attempt to further muddy the water while McGann is caught in the endless "system". They know McGann does not have the funds to fight after discovering the fraud and deception that was set up and executed over years.

and (4) the defendant agreed or assumed responsibility to act for the plaintiff's benefit. The

relationship must have been established before the date of

the transaction or actions giving rise to the claim.

62.  Plaintiff will show the claim for breach of fiduciary duty is Defendant(s) breach of

fiduciary duty that caused the damages Plaintiff has sustained.  Plaintiff will show the

defendant's conduct was a substantial contributing cause of the injury is generally sufficient

which is nothing more than the standard causation requirement applicable in any tort action.

63.  Defendant(s) will have a hard time proving any comparative negligence against

Plaintiff.  Defendant(s) were fully aware of Plaintiff(s) situation personally and professionally

and willfully encouraged Plaintiff to rely upon them to support the property while promising to

begin the business plan at a future date when all litigation ceased.

### FORTH CLAIM FOR RELIEF – CIVIL CONSPIRACY

64.  Plaintiff hereby incorporates the preceding paragraphs as if stated, fully, herein.

65. Plaintiff seeks recover on a claim of civil conspiracy, and can establish  by a

preponderance of evidence the following four elements required: (1) Two or more persons[4]; (2)

An object to be accomplished; (3) A meeting of the minds on the object or course of action; (4)

An unlawful overt act; and (5) Damages proximately caused by the overt act.

66.  Furthermore, to the extent the civil conspiracy from Defendant(s) is based on acts

that are unlawful because they constitute fraud.  The fraudulent acts are being pleaded in

compliance with the heightened particularity standard required by Colorado or Federal Rule of

Civil Procedure 9(b).

---

[4] Knutson, Shudinis, 1450 Oka Kope, LOA Coffee farm, Project Manager.

67.  The Defendant 1450 Oka Kope LLC, Kathy Knutson and Michael Shudinis and others not yet named here- have acted in their individual capacities for their own individual advantage. There are several court cases that have held specific acts, such as the breach of a duty, to constitute an unlawful act within the meaning of CJI-Civ.27:

68.The object was not "build the main house" and contribute; rather it was to accomplished a take over of the property entirely for their own personal use and prevent Plaintiff from operating the property as intended from the beginning and agreed to through the Operating Agreement..  The conspiracy was unlawfully accomplished by willfully inducing Plaintiff to deed her property to the new Partnership developed for the purposes of Agro Tourism and farming production of mushroom & microgreens.  Defendant(s) did not obtain an investment property loan but rater a personal loan and conspired to remove Plaintiff completely from the property that was developed solely by Plaintiff McGann.  Defendant forcibly removed Plaintiff from the property in October 2019.  Defendant, Knutson and her family used Plaintiffs home in Grand Lake for her enjoyment while attending a family wedding just 10 days before denying admittance to Plaintiffs property in Hawaii.  Defendant Knutson repeatedly threatened Plaintiff with things Defendant Shudinis might do regarding the project yet denied access to contacting directly.  Defendant(s) played games and negligently induced and assured Defendant that she needed to continue finishing the structures and farming implementation to be ready to move forward with the business plan per the Operating Agreement.  Plaintiff will/has provide(d) evidence to show Defendant(s) actions and purpose to take over the property were done unlawfully and fraudulently.

69.  Specific intent is not necessary to establish a civil conspiracy claim.  The co-conspirators Defendant(s) need not "knowingly agree to engage in conduct that is known at the time of the agreement to be toritious"

70.  Plaintiff must only establish the existence of "a conscious and deliberate decision to pursue a common plan or design" This common plan or design "need not be shown to have been entered into for the specific purpose of [injuring] the particular person damaged.  If such agreement and concert of action resulted in damages; it is such result that constitutes [the] cause of action, and it is good as against all who participated in producing it."

71. A plaintiff who prevails on a civil conspiracy claim may recover compensatory damages incurred as a result of the conspiracy. These may apparently include both economic and non-economic damages.

72.  Injunctive relief is available to prevent ongoing unlawful conspiratorial acts.

73. Exemplary damages are available to a plaintiff who asserts a civil conspiracy claim under Colorado law. In *Double Oak Construction, LLC v. Cornerstone Development International,LLC*, the Colorado Court of Appeals upheld an award of exemplary damages on the plaintiff's civil conspiracy claim.  This was available to the plaintiff even though the underlying claim for fraudulent transfer did not otherwise entitle the plaintiff to such an award since that claim was equitable. The trial court found that the defendant had "acted *See, e.g.*, *Miller v. Byrne*, 916 P.2d 566 (Colo. App. 1995) (determining that it was error to direct verdict for defendants on punitive damages where reasonable jury could find beyond reasonable doubt that acts causing injury **were attended by circumstances evincing wanton or reckless disregard of rights and feelings of plaintiff**). *See also Miller*, 564 P.2d 127 (where exemplary damages were awarded in action brought on theories of trespass and nuisance, an award of

$300,000 was not so large in relation to the purposes underlying the statute and defendant's financial resources as to require reversal; there was sufficient evidence of wanton and reckless disregard of plaintiff's rights to justify submission of question to jury).

### FIFTH CLAIM FOR RELIEF – INTENTIONAL INFLICATION OF EMOTIONAL DISTRESS / OUTRAGOUS CONDUCT

74.  Plaintiff hereby incorporates the preceding paragraphs as if stated, fully, herein.

75.  Plaintiff incorporates all other paragraphs of this Complaint for purposes of this claim.

76.  Defendants behavior of using the supposed friendship of Plaintiff to manipulate finances, direction with lawsuits, and by controlling Plaintiff McGann's actions for years to seize the property for their own personal use and doing it by causing extreme emotional distress.

77.  This action requires very specific proof of several elements which Plaintiff has all documented proof to present to the court.  The Plaintiff will show that this claim is extraordinarily fact dependent and are both specific and detailed.

78.  The Plaintiff will prove the acts were done intentionally to cause her mental anguish, embarrassment, humiliation, and extreme mental suffering.

79.  Defendant's actions were extreme and outrageous conduct intentionally or recklessly causing severe emotional distress to Plaintiff and is subject to liability from such emotional distress.

80.  Liability has been found where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community, as it is here.  The Defendants actions

are such that an average member of the community would arouse his/her resentment against the "actor"/Defendant(s), and lead him to exclaim, "Outrageous!".

81.  The Defendants pounced on an opportunity in 2017 to take the property created by Plaintiff McGann and used her trust by demanding she carry out actions at their direction on almost every aspect of her life.  From selling her home of 12 years in Castle Rock, CO to how to respond to litigation with lawsuits in Colorado and Hawaii caused by Swany[5] and more.

82.  Colorado Jury Instructions set out the elements to establish a claim of outrageous conduct: (1) The defendant engaged in extreme and outrageous conduct; (2) The defendant did so recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) The defendant's conduct caused the plaintiff severe emotional distress.

83.  The Defendants engaged in extreme and outrageous conduct by presenting false documents to police officers in Hawaii claiming Plaintiff gave her property away to them for absolutely no consideration whatsoever.  This occurred in September 2019 when Plaintiff arrived to the Maui property on a known-to-all trip.  Just ten (10) days before Defendant Knutson enjoyed McGann's Grand Lake, CO property with her family and said nothing about McGann not being permitted on the Maui property.

84.  The Defendants cohered and tricked Plaintiff into signing a note on the Grand Lake, CO property telling her they needed it for financing reasons.  The Defendants delayed the financing of the property for 18 months, per the LOI and Operating Agreement, blaming Plaintiff for the delay in refinancing.

---

[5] Swany was the man who caused the financial situation with McGann by claiming he was a husband and a financial investor in the project in Maui.  It was proved in a Colorado court that he is a conman and did not contribute. McGann obtained a judgment in the amount of $144,833 and has been trying to collect since Sept 2019.

85.   The Defendants tricked Plaintiff McGann into signing notes to the Grand Lake, CO property and told Plaintiff they would not file the note with the county.  Knutson said "it was only needed to obtain the financing".  They tricked McGann and used her state of distress due to the lawsuits and filed the lien several months later when they closed the loan in Feb 2019 without telling Plaintiff McGann.  It was only discovered when Plaintiff McGann attempted to file a chapter 13 but was not permitted because of debt limit due to false notes.

86.   To this day Defendants have not shown an accounting of what the supposed notes were used for.

87.   The defendant did so recklessly and with intent to cause Plaintiff severe emotional distress.  It was at that time Sept/Oct 2019 that the relationship was suddenly ended by Defendant Knutson instructing Plaintiff McGann to "speak the through lawyers going forward" The fake lean was filed 7 months prior with the county without the knowledge of Plaintiff McGann

88.   Colorado courts have adopted the Restatement definition of "extreme and outrageous conduct" now incorporated into a pattern jury instruction for the claim.  It is not necessary for there to be only one example of conduct that supports the claim. In- stead, Colorado has recognized that relatively less egregious types of conduct may be supportive of this claim if joined with several examples, or a pattern, of behavior:

89.   The Defendants have a pattern with years of examples as to the outrageous and extreme behavior that transpired between them.  The series of acts do constitute outrageous conduct and are much more than a mere isolated unkindness or insult.

90.   The court and jury will see the totality of circumstances to determine the cause of action has been proved.  There are a series of events that have taken place over a number of

years and those acts were directed towards the Plaintiff.  There are several acts from leading Plaintiff in litigation, continually stalling and obstructing the business that was supposed to operated per the Operating Agreement.  Plaintiffs never built a "main house" and simply took over the property using it for their own personal use.  In addition, the Plaintiffs willfully presented false documents locking Plaintiff from the property.  They have refused to present the alleged "docusigned" redemption agreement document to this date.

91.   The Defendants tricked Plaintiff by pretending to be protecting her from all the litigation and paying the expenses on the property while asking her to hold off operating the business that would generate more than enough income to support the expenses of the property[6]. The Defendants claimed they were doing this to protect the Plaintiff from Swany who was claiming an ownership.

92.  The Defendants knew every possible inch of Plaintiffs personal life and intervened daily on what actions Plaintiff was to carry out in both personal and professional situations.

93.  The Defendants advised Plaintiff on all legal matters and misused her trust by hiring a lawyer to appear at a hearing in Maui siding with opposing counsel AFTER they spent a year advising Plaintiff's prose actions. Outrageous!

94.   The Defendant's station in life and relationship with the Plaintiff should be a relevant factor in determining the outrageous conduction.  The abuse of Defendant's actions are extreme and outrageous and an abuse by the Defendant in a position in which they inserted themselves to have power to affect the Plaintiff's interest.   There was actual and apparent

---

[6] Plaintiff McGann has achieved much success in Grand Lake, CO where she converted the area under the house into a farm producing USDA Organic certified mushrooms.  McGann/MMM(MysticMountainMushrooms.com)is EDWOSB, Certified Organic and working on educational Science Farm grants that were supposed to be for the Maui property.

authority over Plaintiff and the power to affect her interest and they showed an extreme abuse of their position by manipulating the trust of Plaintiff.

95. The Defendants acted with reckless and intentionally caused the Plaintiff severed emotional distress.  The conduct was fully directed towards Plaintiff and there is a pattern for years.  They intended to cause severe emotional distress knowing that their conduct is certain to have the results.  Defendant's knew they were causing emotional distress.  A person whose conduct causes severe emotional distress in another person has acted recklessly if, at the time, that person knew, or, because of other facts known to him or her, reasonably should have known that there was a substantial probability that their conduct would cause severe emotional distress in another person.   Defendant Knutson had this knowledge.

96.  The threshold showing for emotional distress to be "severe" is a high one; however, Plaintiff will prove this pattern and cause through Defendant's actions over the course of years.

97.  Colorado's pattern civil jury instructions define severe emotional distress:
Severe emotional distress consists of highly unpleasant mental reactions, such as (nervous shock, fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, or worry) and is so extreme that no person of ordinary sensibilities could be expected to tolerate and endure it. The duration and intensity of emotional distress are factors to be considered in determining its severity[7].  (If a person is more susceptible to a certain kind of emotional distress than a person of ordinary sensibilities and that fact is known to another person

---

[7] Plaintiff intends to provide the courts, at appropriate time, the transcript from two 2004 meetings conducted on behalf of 1450 Oka Kope when Plaintiff McGann struggled to begin her business and not lose what little she had left..

who recklessly or intentionally causes that emotional distress, then the emotional distress is severe if it is more than a person of the same or similar susceptibility would reasonably be expected to endure under the same or similar circumstances.)

98. The requirement that the emotional distress be severe is one way to ensure that a claim for purely emotional distress is not fictitious. The amount of evidence required to establish significant emotional distress is directly proportional to the degree of outrageousness of the conduct alleged. The illustration offered by the *Restatement* is that A falsely tells B that her husband has been badly injured in an accident, and is in the hospital with both legs broken, as a practical joke. Because the conduct itself is so outrageous in character, "the mere recital of facts . . . goes far to prove that the claim is not fictitious."

99.  Defendant's falsely say and/or said nothing about in the contrary that Plaintiff would begin the the operations once the Swany lawsuits are concluded.  This was repeatedly said to Plaintiff McGann by Knutson and Shudinis.  They both pretended to be looking out for Plaintiffs best interests tricking her into signing documents and pretending to meet with builders to start a "main house" per the Operating Agreement which never happened.   The Defendant(s) instructed Plaintiff to meet with builders and review plans, etc in late 2017 and 2018. As of this filing, Defendant(s) have listed the house for sale after removing Plaintiff from all financing claiming her credit would not support the refinance.  The Defendant's even offered plans to the "main house" as part of the sale of the property.  Defendant's stole the property and the plans and completely removed Plaintiff suddenly in Oct 2019 without any notice whatsoever.  They accomplished this by tricking her to believe they were working in her best interest protecting the property from Swany.  Defendants gained control over to Plaintiff.  They said they relieving the "duty" to produce the income needed to operate the property.  The operational cost are minimum

because Plaintiff McGann designed two solar PV systems that were grandfathered with Maui

Electric Company as a NEM Net Energy Meter Agreement that was set to expire.  Defendant(s)

1450 Oka Kope, Shudinis and Knutson all agreed the system should be put in place for long term

savings.  If the NEM expired[8] the ability to generate power back at .38 per kw ceased to exist

eliminating many grant opportunities available for the Farm, Science Agro Tourism of the entity

to be named Mushrooms & Microgreens of Maui. .

### SEVENTH CLAIM FOR RELIEF – INTERFERNCE WITH THE PERFORMANCE OF A CONTRACT

100.  Plaintiff incorporates all other paragraphs of this Complaint for purposes of this

claim.

101.  Defendant's prohibited, blocked and mislead Plaintiff McGann that the Operating

Agreement business plan would begin when the Swany litigation ended.

102.  Defendant's presented false and forged documents claiming Plaintiff gave her

property away with no consideration

103.  Defendant's placed the property for sale in the Maui and now have an offer on the

property.  Defendant's offered "main house" plans that were solely designed by Plaintiff.

### EIGHTH CLAIM FOR RELIEF – DECLARATORY JUDGMENT – ALL DEFENDANT(S)

104.  Plaintiff incorporate as though set forth fully herein all prior allegations.

105.    The Articles constitute a writing and contract under which rights, status, and other
legal relations may be properly declared pursuant to C.R.C.P. 57.

106.    Plaintiff McGann  are interested persons under the Articles.

107    Upon information and belief, all persons who have or claim an interest in Defendant
Corporation are named parties to this action.

---

[8] McGann had extended the agreement 3 times prior with MECO and was told this was the "final-final".

108.     Plaintiff McGann request and are entitled to a declaration of their and all other rights, statuses, and legal relations under the Articles, including specifically their status as holders of 49 shares each of 1450 Oka Kope LLC..

## JURY DEMAND

109.  Plaintiff hereby incorporates the preceding paragraphs as if stated, fully, herein.

110.  Defendants deprived Plaintiff of her property arbitrarily, to offend notions of

fairness and due process in violation of the Colorado Constitution and U.S. Constitution.

111.  **A JURY TRIAL IS DEMANDED**

WHEREFORE, plaintiff pleads with the courts for judgment against Defendants, and

relief including but not limited to the following;

A.  Damages in an amount to be proven at trial;

B.  Prejudgment and post judgment interest;

C.  Costs; and

D.  Such other and further relief as this court deems just and proper.

E.  Request that a constructive trust be evoked by Defendant(s) for damages and

lost income and wages.

DATED this 10th day of December 2020.

s/Sherry McGann

Sherry McGann
1535 Grand Ave – 2355
Grand Lake, CO 80447
Telephone: (303) 507-7658
E-mail sherry@nalanimaui.com
Prose

**Defendant(s) Address:**

1450 Oka Kope LLC
11707 E. 51st Avenue, Denver, CO 80239

Michael Shuidinis
11707 E. 51st Avenue, Denver, CO 80239

Kathy Knutson
11707 E. 51st Avenue, Denver, CO 80239

<u>**CERTIFICATE OF SERVICE**</u>

I, the undersigned, hereby certify that on December 11th 2020 a true and correct copy of the foregoing was served via U.S. Mail to all parties and counsel who have entered an appearance.

<u>   *s/     Sherry McGann*   </u>
Sherry McGann

*Pursuant to C.R.C.P. 121 a true and correct copy of the foregoing with original or scanned signatures is maintained by Sherry McGann. and will be made available for inspection or review upon request.*